Good morning, Your Honor. Steve Hubachek and Chase Golnick, Federal Defenders, on behalf of the District Court. Oh, yes, Mr. Hubachek. I'm sorry. It's a dark horse in my head. I didn't recognize you. Good morning, Your Honor. Yes, how are you? Your Honor, the District Court erred in not accepting the plea. It erred under Ellis and the separation of powers in rejecting the plea almost exclusively because of the lack of sufficient time in the two offenses to which Mr. Vasquez proposed to plead. If it had any discretion at all This is a question we left open in Ellis. Yes, it is. And I gather your position, if I understand it correctly, is that I don't want to mischaracterize, I don't want to put words in your mouth, so I I resist that. No, no, no. I want you to modify my statement if I'm overstating it, but I understand your position to be that if the government and the defendant agree that on a guilty plea that the court has no choice but to accept it, save for compliance with requirements of 11b, that the defendant is properly advised and abstains his rights, that there's a factual basis for the plea and all that. But for that essentially ministerial function  the court has no choice but to accept that. To accept the plea, that's correct. Not the plea agreement. Not the plea agreement. What happens after that, the court can do as it pleases within the discretion allotted by the Sentencing Reform Act. But as to the plea, there's no discretion. Well, what about all those cases we have that echo Santabello that say, of course, there's no right to have a guilty plea accepted? How do we come to terms with those? Well, the Santabello language, I don't know that this Court has ever come out and said that after the amendments in 1974 to Rule 11 that Santabello is necessarily the law. So I know that Santabello is frequently cited and it's cited more often in other circuits. But the real distinction is, is at the time that Santabello made that statement, Rule 11 explicitly provided for consent on the part of the district court to entry of a guilty plea. That language was deleted in the 1974 amendments. And as far as I know, there is no federal case that has actually interpreted the significance of that deletion. The other significant point is that Rule 11a does provide for a consent requirement in really three situations. A conditional plea, a NOLO plea, and effectively an Alford plea because the commentary tells us to treat Alford and NOLO as effectively the same. If the district court has consent to reject every plea in its discretion, then the language in 11a setting out a consent requirement for NOLO and for Alford and for conditional pleas is pure surplusage. We don't interpret the rule to include surplusage. So I think that not only do we have the fact that the consent language was deleted from Rule 11, but the actual structure of Rule 11a that creates a specific consent requirement limited to three instances also supports our belief that there is no more consent requirement. The only case that I think really causes me trouble on that point is the Hyde case. Because the Hyde case does say, it's got one sentence that says that the district court after performing the 11b functions in its discretion can accept the plea. But I don't think that we can take the single sentence in the Hyde case which cites no authority, which under Judge Kaczynski's view of what's dicta in the Johnson case does not have any sort of consideration of the alternatives or any sort of consideration of the amendments. Even if you take that other view of dicta. But that itself was dicta according to Judge Reimann. Well, as Your Honor pointed out in Miller v. Gammie, Miranda v. Kitzhaber has adopted your approach. So under your approach, that portion of Hyde is dicta and I don't think binds this Court. How about the echo of that statement in the United States v. Brown, which is an Eighth Circuit case? I take it you think this is still sort of emanations from the Santabella sentiment? I think it is. I can see that there are cases post-1974 from other circuits that have reiterated the discretionary angle. But none of them have addressed the amendments to Rule 74 or the surplusage argument that I just made. The other thing is, is that the absolute discretion to reject the plea is kind of inconsistent with the way that plea agreements are later addressed. It gives the district court powers to reject plea agreements. And when the district court rejects the plea agreement, the onus is then put on the defendant, which is one of the points that's made in Ellis. You know, once the district court rejects the plea agreement, for instance, in this case, if Mr. Vasquez's plea had been accepted, which it should have, then the district court, assuming it has discretion, and I don't think that it does under these facts, but assuming it does have discretion, it should have then said, Mr. Vasquez Ramirez, you can either abide by your plea or you can withdraw your plea in your discretion. That's what the rule provides for in the instance where the district court doesn't like the appeal that's been struck. Kennedy. The court in this situation can't finish his sentence and say, but you have to realize that you may now be treated more harshly than you expected because the court can't do it. Right. If the district court had rejected the plea here, it would have had very significant implications. Number one, Mr. Vasquez's valuable right in the plea agreement to not be prosecuted on 1326 would arguably not be enforceable. The government, on the other hand, would lose Mr. Vasquez's promises not to appeal and his promise not to file a 2255, and there might even be a promise to agree to another deportation. I don't remember specifically. So the district court's rejection of the plea agreement is not a ministerial act. It's a very significant act that substantially alters the relationship between the parties. So it's not, Judge Burns said, I'm not doing merely ministerial acts up here, and he wasn't. If he had followed the way Rule 11 is structured, he should have accepted the plea, and then to the extent he has discretion to reject the plea agreement, then he could have done that, and that would have altered the party's contractual arrangement. Now, is the case affected at all, in your view, by the fact that your client, Mr. Vasquez, was indicted under 1326? I realize that the government says it was a mistake, but does it affect the case at all as far as you see it? I don't think that it does because Rule 11 provides for agreements where you don't bring charges and also agreements where you dismiss charges. The agreement that Mr. Vasquez sought to present to the district court provided that they would not prosecute him under 1326. So let's say he were to enter this plea. What happens to 1326? Well, if he enters the plea and the judge accepts the plea and accepts the plea agreement, then the government would be obliged to dismiss it. But wouldn't the dismissal itself be subject to the district court's approval? It would be subject to very limited discretion under Rule 48A, and I don't think that there would be any basis for rejecting that. I think one of the things that's odd about this case is the district court never really articulates why Mr. Vasquez and similarly situated people are getting plea offers, which is the executive has made a choice that it's better to have a lot of guys get less time than to have less guys get a lot of time. Basically, they want to go for volume, and that's effectively the executive's allocation of its prosecutorial resources. So it's a Walmart theory of justice? Exactly. That's exactly what it is. And Mr. Curnow in his brief submitted a memo from the Attorney General approving the Fast Track program. That is an executive decision about whether – I looked at our internal records. The average 1326 case in my office is like 36 hours. This case, we've spent something like 360 hours. So maybe that means that by refusing this plea, 10 other guys didn't get prosecuted. Now, I don't know how much time they devote to these cases in the prosecutor's office, but the bottom line is that they give these guys 30 months so that they can get more of them. The cases go very quickly. This one, because the judge didn't accept the plea, didn't go along those lines. And I think that the fact that the district court judge never really articulated why this case shouldn't be treated as a Fast Track because of the executive's allocation of its resources, which is cited in Ellis, in Miller. The Amidon case is one of the significant things that judges really can't evaluate. I think that demonstrates that he abused his discretion, assuming he has some. I think Ellis, though, that talks about how the judge's error there under the separation of powers was to reject the charge because the maximum was too low is precisely what happened here. I mean, when it gets down to it, the district court judge thought that the maximum sentence under the two 1325s was too low. That's precisely what this court rejected in the Ellis case. So I think that it violated the separation of powers to the extent that there was any discretion. That discretion was abused because the court didn't factor in the executive's allocation of its resources. Maybe we should hear from the government, especially if you want to save any time for Obama. Thank you, Your Honor. Mr. Cronin. Yes, thank you. Please, the Court. I really would just like to concentrate on the concept that what we're dealing with here is a charge bargain. The government has made a decision under the program that was approved by the Attorney General to allocate its resources in a particular way. And Mr. Hubachek is correct. I mean, we do this so that we can prosecute the maximum number of people in a minimal amount of time. And just to share with the court, in fiscal year 2004, of all the criminal aliens that came in, and there were a significant number, we chose to prosecute 1,930 of them that were in a 1326 kind of situation. Of those, 1,617 were disposed of by way of fast track, leaving something over 300 cases that were set for trial. In fiscal year 2003, we had 1,952 people that were 1326 eligible, if you will. And of those, 1,785 of them were disposed of by way of fast track, leaving a smaller number for trial. And we do that specifically so that the office has time to do other things, such as investigate the city's pension fund, investigate the city council, and do a lot of other things that we are charged with doing. So what's happening here is that we've set up this charge bargain situation so that we are able to do that. And the attorney general has specifically said, yes, you can do that. What's happening is that Judge Burns is making a decision that we, despite the fact that we are trying to allocate our resources, we should be, on an individual basis, he should be able to determine whether or not our charging decisions were correct. Is it in the record as to why the government chose to present this other case to the grand jury and have this? It's before this court, yes. Well, I know, but what was the reason given? Was it in the record? Well, the reason, well, what happened was that there was a... Part of the plea bargain? Excuse me? Part of the plea bargain? No, no, no. What happened was that there was a miscommunication between defense counsel and the prosecution as far as how the case was going to be disposed of. And we did not receive an answer to a telephone message, and so we proceeded to the grand jury and return an indictment. And we review that in our brief. And thereafter, defense counsel came to us and said, well, we would still like to accept the fast track, and we agreed to do that. But what's happening, again, what's happening here is that there is an interference with our executive decision to dispose of this case. I take it your answer to the question I asked Mr. Hubercheck would be the same. As far as you're concerned, the fact that it was an indictment under 26 makes this case no different from a case where there would not have been an indictment. That's correct in this particular case. As far as you're concerned. Is there any point that you can get down the road with a case where the government and the defendant don't have an unmitigated right to say, okay, we now agree to a guilty plea on these charges and drop the rest of the case? Can you do it at the eve of trial? Can you do it middle of trial? I'm just wondering, is there any point at which the court has any authority to say no? Well, I have read cases, and I can't give you the exact case name. I have read cases where a defendant in the middle of trial decided that they wanted to plead guilty. And they came forward close to the end of trial and said, okay, we want to plead guilty. And the court denied the right to plead guilty, and the court of appeals upheld that decision not to accept the guilty plea. However, in the cases that I did read, the issue came down to the fact that the defendant really was a little wishy-washy on the plea and really wasn't ready to admit that they'd done anything wrong. But there have been cases that have said that, yes. Does your argument that this interference with the charging decision violates the separation of powers mean that the judge not only has to accept the plea, he also has to accept the plea agreement? No, I can't say that. I cannot say that. The cases are very clear that the judge has the right to reject the plea agreement if he feels the sentence is too lenient. In this case, that's irrelevant because the judge has no discretion. I mean, basically, what the government agreed to is the maximum the judge could give anyway, right? That's right. It's set up so that there is a maximum sentence. So, I mean, the judge has discretion to? Well, he has discretion to go downward. He doesn't have to give the 30 months. Certainly. But he can't go beyond the 30 months because the charge is set up in a way that that fixes the amount of sentence.  Well, if the government preserves its charging decision as to decline to prosecute further, is that part of the scenario? Well, no. I mean, no. What can happen is that the defendant can plead straight up to the charges, or the government can make a decision, depending on resources and or the facts of the case, can decide to go forward on a 1326 prosecution. Or not. Or not. And leave that for another day, presumably. Exactly. Certainly. Okay. I wish to save the time, five, four minutes or so for rebuttal. We'll hear from the court. Good morning, Your Honors. I think this is an unusual issue. I mean, I think the issue framed by the Petitioners in this case is whether Rule 11, as this Court has said, limits a judge in determining whether to accept a plea or not to just looking at issues such as was it knowing, was it intelligent, was it voluntary, was there a factual basis. And once the Court crosses those steps, they argue that the Court has no discretion to reject the plea. I understand that they based it on their interpretation of Rule 11. And I know that Judge Trott, at least in his concurring opinion in the Ellis case, sort of gave a differing interpretation of Rule 11. That said, I think Judge Burns was a careful judge here. He read the cases. He read the law. And when he read that law, what he found was a line of cases going back to the 1960s saying that a court had discretion to reject a plea. Not just discretion to reject a plea when it wasn't knowing, voluntary, and intelligent. And that line of cases goes up until 2004 in this Court's Ellis opinion. And I think that's a critical issue here. I mean, if this Court is going to say — It's hard to square with language of Rule 11. I mean, I don't see it in there, though. Well — I mean, there are all sorts of things that say can only be done with a court's consent. There are some things that can only be done with the consent of the government and the court. But the pleading of not guilty is unconditional. Your Honor, I agree. It's hard to square with Rule 11 in this forum. But the cases — I think Justice Scalia would be unhappy with us if we — He may well be. — tried to read something into it that wasn't there. He may well be, Your Honor. And I'm not being facetious. I think — I understand. So then you have to rely on Case Act Santa Bella. Now, Santa Bella, of course, was a helios, right? I believe it was, Your Honor. It was a case where the government reneged on its plea agreement. Right. But I think, Your Honor, when you look at the cases — I mean, the court asked, is there ever a case that says that a plea can be rejected because of time limits? There are. And those cases are cited here. You have the Gamboa case where the circuit — not this circuit, but another circuit — said, yeah, you know what? They didn't enter their pleas in time. And because they didn't enter their pleas in time and because it wasn't enough time, didn't leave the court enough sentencing discretion, I can reject the plea. That's a basis for rejecting the plea. So which case are you relying on? Gamboa. It's called Gamboa. Pardon me? What was the year? Was it before or after the — It was after that, Your Honor. I believe Gamboa is 1999. It's an 11th Circuit case where there were phone counts that were offered during the trial, and the court gave a time limit. Now, there were, I believe, three different issues. One of the defendants had some — the court said, well, I don't know that these people could meet a factual basis to plead to a phone count, but it never took the step to find out. But the circuit also said the time limits alone are enough to reject it. Gamboa was a plea agreement case. It was, Your Honor. But the court also — What do you see in there that they could speak to, or why did they have occasion to speak to the ability to accept a naked plea? Because the court said, because you didn't meet the time limit, I'm not going to let the defendant plead. That was one of the issues that came up. So the plea was actually rejected itself. That was one of the issues. It wasn't just the plea agreement itself. And I think, Your Honor — Of course, that's different from a plea early on. It may well be, Your Honor. And I think this case is unusual in many respects. But I think the point I'm trying to make is it's hard to say that a district court judge is clearly erroneous when he reads all the cases and looks at Rule 11, and you have courts — even in Ellis. I mean, the court had clearly read Ellis. It was discussed during the hearings. And in that case, you have the majority is deciding whether once the court accepts a plea, can it vacate it. We are not really blaming the judge. I think he had, you know, good reason to be confused. I think so, Your Honor. But really, it's not about the judges. You know, we're not assigning fault here. The question is what is the right answer. Right. I understand that. And I find rather compelling the arguments that were made by the government and by the defendant that says it's none of the court's business. The government can choose to charge or not to charge. I mean, Lord only knows what would happen if the government charged everybody that could conceivably be or could be guilty of a crime. You know, we all sort of jaywalk once in a while or whatnot, you know, and get away with it. And, you know, part of the important part of running a government is exercising discretion as to how many potentially guilty people you're going to go after. And that's a question both of policy and of money, of where you allocate your resources. And they have a special problem, I understand, or they, you, the Southern District has a special problem, the problem of volume. And for better or for worse, for reasons that the Attorney General considers to be legitimate, they have decided to concentrate on getting a lot of people through this program by giving them very attractive deals, making sure that they suffer some punishment, and then get deported. These are substantial benefits to the government. I'm not sure why the court should have any stake in this. Well, Your Honor, I think that's apparent. I mean, what the court here did was it looked to the government and it said, look, this is a charge bargain. You may not want to call it a charge bargain, but it's clearly a charge bargain.  I agree. It's a charge bargain. I agree. But their plea agreement didn't use that phrase. Their plea agreement referred to the B section, not the A section. And it's clearly an A case. And the government admitted it as much in the plea hearing where they said the indictment would be dismissed pursuant to the plea agreement. But that said, Your Honor, Judge Burns looked at the Assistant U.S. Attorney and he said to him, why are you making this deal? Just explain it to me. What is the government's rationale? Tell me something. And the Assistant U.S. Attorney disavowed the deal. He stood down in court and he said that he certainly didn't make this deal and he understood the court's concerns. The second assistant who came down to court in September when they moved for the acceptance of the plea, when Judge Burns said, are you the one who made the plea or why are you here? He said, I drew the short straw. And the only thing he told the court was, well, the last 1326 was a 51-month 1326 conviction, but that happened in Arizona. And I wasn't involved in the negotiations in this case. But, you know, it seems to me that, you know, maybe that's what they considered. That's partly. Maybe they could have been more articulate about it. But what I'm wondering, other than personal curiosity, why is this any concern of the court? The government can choose. I mean, for all we know, the government is aware of evidence that Mr. Vasquez committed many other crimes. It has chosen not to charge him with. Is the court entitled to call the assistant U.S. attorney into court and say, tell me what else you have on Mr. Vasquez? And could there possibly be other things you could indict him of? And maybe our government should really go after him and try to get him a child molesting. I mean, I'm not saying there is anything like that. But, you know, whatever other evidence the government might have, is the court with? Absolutely. Why is that? Because the court under Rule 11 is specifically required to consider a charge bargain. They say the indictment doesn't matter. It does. The indictment was going to be dismissed pursuant to the charge bargain. Where is this? Pardon me? In Rule 11, Your Honor. In Rule 11, it says. Where specifically? Oh, specifically in Rule 11, it's 11, I believe it's 11-3A. The court may reject an 11-C-1A. Accept the agreement, reject it, or defer a decision. And when you look at 11-what? I believe it's C-A, Your Honor. 11-3A, I'm sorry. There's no 11-3. 11 is divided into. No, 11-3A, I'm sorry. No, 11 is divided into A, B, and C, not 3. It has to be something else. I'm sorry, 11-C-3A. I apologize, Your Honor. Well, that deals with preagreements. That's right. Well, that's what the court was dealing with. No, no. It has nothing to do with this. The court rejects the preagreement. That's fine. I don't accept the preagreement. But what does that have to do with pleas? What does that have to do with the government says, look, we choose not to prosecute him on this other charge because we're lazy, because we don't feel like doing it, for whatever reason, because we think he's such a good-looking man that we just can't get ourselves to prosecute him. What concern is that of the court? I mean, obviously, they have much better reason than that. They have an entire policy having to do with thousands of aliens that come in that need to be moved back across the border, punished and then moved back across the border, and they adopt this policy. What possible concern is it of the court? Well, I think it is a concern of the court because the 1326 charge was pending. It was going to be dismissed pursuant to the plea. So what? Now, if the court is asking the question, why does it matter in entering the plea? How can the court force the government to move forward to present evidence and witnesses on a charge that it chooses not to do that? Because the court is clearly entitled under a charge bargain. We're not an inquisitorial system. Pardon me? We are not an inquisitorial system. No, that's right, Your Honor. This is not France. I mean, there are systems, and I don't disparage them at all, where the court is much more involved in shaping the charges, the inquisitorial system. We are an advocatorial system. A court is a neutral arbiter of cases that are brought to it. And if the government says, look, for whatever reasons, we choose not to prosecute him on 1326, why — I don't understand why the court should be, other than, you know, mildly curious. No, I think because under Rule 11, the court can consider a charge bargain. And that's what this Court was presenting. And can reject the plea agreement. That's correct. But nobody disputes. I have not heard the other side dispute the court's power to reject the plea agreement. So whatever is contained in the plea agreement is not in any way binding on the court. What we're talking about here is the court's power to reject the plea, the plea after which the court can do its darnedest. It's not bound in any way by the agreement of the parties because it rejected it. What authority and what interest and what legitimate concern does a court have with a government's decision to charge one and pursue one charge and dismiss another? I'm baffled. Well, I think, Your Honor, when you get into this situation, you do still run into that area where the plea and the plea agreement, to a certain extent, are intertwined. When this case came — I'm baffled by the court's insistence, by the Respondent's insistence, that somehow we, the judges, have some legitimate interest in this. I think that the judges — the judiciary does have a legitimate interest to the extent that it affects sentencing. Well, what if the judge learns that Mr. Vazquez, Mr. Vasquez, in fact, or the government has evidence of other crimes that Mr. Vazquez has committed? I'm not saying he has, mind you. I'm just giving this hypothetical. And the court says, you know, you brought these charges, but, you know, even if he gets found guilty of these charges, I can't punish him enough, given what I think he deserves. I think the government ought to bring other charges against him. I hear you have evidence of this or that. Is that a legitimate thing for the court to do? No, I don't think so. And I think Judge Burns said that. How is this different? Because the government had brought the charges in this case, and that's the difference. The 1326 was pending, and the two 1325s were pending. And that makes a difference. That's a question I asked opposing counsel, and that totally made no difference. It was indictment. Why don't you persuade me otherwise? Yes, Your Honor, because if they had just brought the 1325s, as Judge Burns said on the record, I'd be stuck. It's up to the government to decide what charges to bring. If they had just brought the 1325s, and this gentleman decided that he wanted to plead straight up to the 30-month deal or pursuant to a plea agreement with the 30-month deal, I'd be stuck. I have no discretion beyond that. But you're saying he'd have to accept the plea agreement if the 1326 charge had not been. I don't know if the judge would have to accept the plea agreement, but certainly his sentencing discretion in any event was done, because the most he could give was 30 months. He'd have to accept the plea. He would have to accept the plea, because there are no other charges pending. I think when there are other charges pending and the court is here, as both Judge Kaczynski and Judge Trott said in the Ellis concurring opinions, now the court can defer the plea, defer the plea agreement, consider them all at once. And I think that's what this judge was doing, because there were other charges being dismissed. And the court was being asked to dismiss them. Mr. Hubachek says, oh, well, the court would consider that under Rule 48. That's not true. You look at Miller. You look at Kerrigan. You look at a number of cases that are cited. When a government dismisses charges pursuant to a plea agreement, you actually look at it under Rule 11. Now, it's not unfettered discretion. There's clearly that conflict between the judiciary's right to sentence and the government's right to charge. And so every case that deals with a charge bargain decision says the judge should tread warily. And what it tells the judge to do is ask the government to state its reasons for why it's making this charge bargain. And then you state your justifications for rejecting the charge bargain. And then we can review it for abuse of discretion. And in this case, don't Mr. Kernow and Mr. Hubachek come into this court and say, well, the 1326 was a mistake, and we prosecuted this many cases, and we want to do more serious offenders so we can do 1,900 of these cases. None of those reasons were put on the record before Judge Burns. So the government didn't even try to make a record. All they did was one assistant said, hey, it's not my deal. I don't want anything to do with it. And the other guy said, you know, well, the other cases are their own. I find troublesome the idea that the government has to come in. I mean, Mr. Kernow's offer does these reasons, and, you know, I guess we all live with these cases, and we know the reality of the Southern District, but these are matters that are internal to the executive branch. And, you know, I am convinced because of that and because of Mr. Kernow's representations that there are good reasons for this, or certainly legitimate reasons on the part of the government to adapt this program. But I'm not at all sure why this is something that we ought to get involved in, since we don't – I mean, they don't – judges don't get involved in the grand jury process at all. We don't get involved in investigations. We don't get involved in deciding how cases are assigned to the Assistant to the United States Attorneys. And why the government's reasons, good or bad, for choosing to not pursue a particular charge is really legitimate judicial business. I think, Your Honor, in my mind – and I understand the Court's first point about Rule 11 being, you know, inconsistent with the case law going back for 30 years. That's one issue. I think when you're talking about whether the Court should accept a plea, I think when there are other charges pending, I think the Court should consider it. Why can't the Court just accept the plea, reject the plea agreement, and then the 1326 charge is out there? Maybe the government will choose to pursue it. Maybe it won't once they're out of the plea agreement. I think that's the question for the day, Your Honor. And I think the answer is – and I hate to say this, but this is sort of what happens with Walmart justice. Everybody goes into court. You're going to do the plea, the plea agreement, and the sentencing at the same time. And the parties ask for it. The Court is given enough information to make a decision. But I think when you look at the reality of this case, the defendant said, Well, you know, I could still plead to the 1325s, and then I'll try to bring a specific – I'll bring a breach of performance, basically, against the government and force them to dismiss the 1326. And Judge Burns said, Well, basically, I don't think that you can do that. I mean, you know, it's sort of – you have language that the Court's acceptance of a plea agreement is conditioned subsequent to the agreement. And so you didn't have a situation where the defendant said, I'm just going to plead. I mean, the other way this case could have been handled is if the government indicted the guy by mistake, they could have moved to dismiss the indictment, separate and apart from any plea agreement, if it was a mistake. And then Judge Burns' discretion would have been limited to Rule 48 discretion, if there was a separate motion to dismiss the indictment. But this sounds like kibuki pale. I mean, I understand. Why does it matter whether it's done in this order or in that order? Either the Court has a legitimate interest in controlling whether the prosecutor charges or doesn't charge or pursues or doesn't pursue, or in which case the order this is done should make no difference, or it doesn't, and in which case the order it does it in should make no difference either. I think it's – I think – and the answer is, Your Honor, I don't disagree with the Court. It's possible that we could go back and this Court could say, if it's knowing, intelligent, voluntary, the District Court has no discretion and must accept the plea because that's what Rule 11 says in our view. And the Court could say that. And then we're going to be right back in the same spot because the next thing that's going to happen is the Court's going to say, fine, plea's accepted, plea agreement's rejected, not dismissing the 1326. So you're in the same position. You've pledged to the 1325s. You have the 1326 pending. Well, I'm going to set a trial date on that. And, you know, I don't know where we get when we do that. But it's – It's a strange weapon because, of course, they can try the case, I guess. You know, somebody wants to plead guilty, but we're going to – we can't seem to arrange that, so we'll just try the case as if he's pleading not guilty and maybe stipulate the facts or something. Or a conditional plea and determine the Court's, you know, acceptance or rejection of the plea agreement. It is an unusual case. It's a fine instrument. I just think that in looking at the case law and the rule, I mean, it seemed to me that it's – You know, I didn't understand your point at all. I didn't stop you because it looked to me like it just can't be did, but I didn't follow what you said. I'm sorry, Your Honor. In what respect? You said, let's say we say that he's got to accept the plea if it's nonvoluntary. Then the 1326 count will still be hanging out there. I think that's what the other side is asking for. I think they'd be very happy with that. Are you, on behalf of your client, saying that's what your Court is willing to do? Should we hold this in obedience for the Court to do that? I think they're perfectly willing to have the 1326 hanging out there and defend this – I mean, I don't want to speak for Mr. Kupchak, but he can get up and tell us himself. He's willing to live with the possibility that the government might renege on its agreement not to pursue the 1326. And I think the reason he does, he thinks Mr. Kerner is a man of honor, and they have a good working relationship, and that if they say they're not going to pursue it, that's good enough. And that's the way law should be practiced among honorable lawyers. A word is as good as a written agreement. So I think we've reached consensus here. I mean, if – I think, Your Honor, in the first instance, I think Judge Burns would like nothing more than guidance on this issue of the first half of Rule 11. I mean, if this Court makes that – Well, he might start by reading it. Well, Your Honor, I disagree, Your Honor. The defendant may plead not guilty. You know, if he just read it and did what it said there, he wouldn't need to come to us. Well, I guess he read Ellis, where this Court and Judge Charles said you can defer the acceptance. Ellis said nothing to the contrary. Ellis left open this question for another day because the 10th Circuit seems to have said something different, although the 10th Circuit since seems to have changed its mind. But Ellis certainly said nothing to the contrary. But, you know, there are only five words or six words there. A defendant may plead not guilty. I don't see where we get past that. And if Judge Burns just read the rule, I don't think there would be any problem here. Let me ask one question, though, because it follows from Judge Kaczynski's comments. I don't understand your position to be that Judge Burns is content to accept guilty pleas as long as the 1326 charge is outstanding. Whether he would be or not, I don't know, Your Honor. I mean, he didn't. I mean, it was outstanding, and he didn't. And clearly, his focus was not on the plea point. It was on the plea agreement part and rejecting that. And I think that was what was uppermost in his mind, that I'm not going to go along with this plea agreement and dismiss the 1326. And if that's what the defendant wants, he's not getting the benefit of his bargain. Well, what he clearly didn't want was to go ahead and accept the pleas, be forced into a 30-month sentence because he thought, I believe, and I think it's very clear from the record, he thought that was going to be the end of it, no matter whether he rejected the plea agreement or not. He thought the charges weren't sufficient. And I would be puzzled if your position is that the judge would now be content to accept the plea, the pleas, and to leave the 1326 matter pending because that's an option he had and rejected. I think, Your Honor, I think Judge Burns, and with all due respect to Judge Kaczynski, with the case law that's out there, I don't think it was as clear as reading the rule in terms of whether you could accept or reject a plea. That said, I think that when we go to the second half of it, Judge Burns did think that the plea agreement was insufficient and wanted to keep the 1326 pending, which had already been filed. He didn't tell them to go file a 1326. They brought the charge. I understand that. Thank you. Thank you. You have a little time left for about, I believe, four minutes and 14 seconds. We'll round it to four minutes. Thank you. I'm curious. Following up on Judge Canby's last question, Judge Burns did express his view that the plea to the 1325s was not sufficient because of the statutory maximum. Ultimately, whether this court decides it on this petition or maybe we have to address this issue in a subsequent appeal, we believe that under Ellis that's not a basis for rejecting the plea. That Ellis specifically said at, I think it was page 1209, when the district court made the further decision that the second-degree charge itself was too lenient, it intruded into the charging decision a function generally within the prosecutor's exclusive domain. So I think that Judge Kaczynski's remark that we would be happy to go back and plead is true, but we do believe that it violated the separation of powers to reject the plea agreement itself, and we also believe that even if he had discretion to reject it, that he abused it by not considering the fast-track items that we already covered in the opening remarks. So that's the question. What do you care about the plea agreement? Your plea agreement, I mean, there's nothing more that your client can get in 30 months. So if you plead guilty to that, you know, the judge might go down a little bit from that, but not likely. I think the court will understand that the government, you know, this is sort of a three-way bargain in a way. That the government will not put many cases on the fast track if judges reduce these sentences down to 12 months or six months or probation or, you know, whatever. I think it is understood that if you accept the, you know, if this deal is struck, that the way the system will work is that the judges keep giving 30-month sentences, which are by all accounts very generous, and there's no reason at all why a judge would want to depart downward in any substantial amount of cases, or perhaps in any cases. So the plea agreement does you no good here. Assuming that you get to plead guilty on the 25 charges, your client will get 30 months, and the rest of what is involved is an agreement between you and the United States government, things having to do with waiver of appeals, deportation issues, and so on, of no concern to the court at all. So even if the court doesn't accept it, you still have an agreement with the government that's binding. I mean, the court isn't bound by it, but you still have a deal. And beyond the written contract, what I've said I'm sure goes. I'm sure that you and Mr. Kernow have an excellent working relationship of mutual trust and respect, which is a very good thing to have among prosecutors and defense lawyers, and there's no way anybody's going to go back on this deal, right? Even if it weren't in writing. I think that you're right. I think my obligation is to try to get the best situation for my client, and the best situation is to have a fully enforceable accepted plea agreement. But as a practical matter, I have no expectation that this man will get less than 30 months when he enters those two pleas. But that's your only hope. Your only hope in saying an accepted plea agreement is that somehow some judge or the judge or whoever judge, whoever this goes back to, will somehow give less than 30 months. As a practical matter, that is a pipe dream. I think that's probably true. I don't want to say anything against your client's interest, but I understand this is a fabulous deal for him. This is a fabulous deal for everybody that's offered this, which is why it works. Exactly. It's a fabulous deal and much better. I mean, he would be facing, what, 10 years? 77 to 96 months is what he'd be facing. The maximum sentence would be 20 years. And, Your Honor, you did mention the idea of sending it to another judge, which we certainly would support, and I think it would be required under Ellis, given that there's already been review of the effectively what's a pre-sentence report. You know, Ellis says that, and that's probably what we're required to do, although as a practical matter, since nothing can happen in this case other than what we all know will happen anyway, I don't know that there's a need for doing this in this case, where the prejudice would be from the fact that the judge saw the plea agreement. The prejudice could be that, assuming that the government, the plea agreement is rejected, and the government falls through and does move to dismiss, if that motion were denied, then we would be back up here on another appeal. And I think that absent reassignment, given. I'm sorry, the dismissal of the 1326? Yes. The judge could deny that. So I think that given the fact that the pre-sentence report's already been reviewed and strong opinions have already been formed, that reassignment would be appropriate so that the next judge would consider both the plea agreement and a potential Rule 48 motion. But in the instance of confrontations and this kind of thing, I read one case from another circuit where the judge declines permission to dismiss under Rule 48. The government then says, all right, if we have to try this case, we're not proceeding any further. We're not going to offer any evidence or anything else. So the judge appoints a special prosecutor to prosecute the case and gets it reversed. That's a Seventh Circuit case, I think, involving Judge Shabazz. Yeah. Unless the court has any further questions, I'm out of time, and I seem to have taken all of Mr. Curnow's, too. We'll give Mr. Curnow a minute, if he would like to say anything further. Just, I probably only take 30 seconds. I have to agree with Judge Kuczynski that our reasons for bringing a particular charge and offering a particular deal are just simply no business of the court. And even if it were, Judge Burns is fully aware of what the fast-track program is all about and why it is implemented. You can tell that just, I mean, it's been going on for several years. And also, he makes remarks in the record that indicate that he's fully aware of what the fast-track program is all about. And whether we have witness problems or whether we have document problems or so on that would compel us to offer a better deal, that's just simply none of his business. And so we believe that the record is pretty clear that he was interfering with our charging decisions. Okay. Thank you, counsel. I'm very well on your case. It's order submitted. We are adjourned.
judges: Canby, Kozinski, Siler